IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

TEXARKANA DIVISION

| | |
|---|---|
| STELLA FREEMAN § | |
| § | CIVIL ACTION NO. 5:14-CV-49 |
| COMMISSIONER OF SOCIAL § SECURITY ADMINISTRATION | |

MEMORANDUM OPINION AND ORDER OF DISMISSAL

Stella Freeman ("Plaintiff") initiated this civil action pursuant to the Social Security Act ("The Act"), Section 405(g) for judicial review of the Commissioner's denial of Plaintiff's applications for Social Security benefits. The Court is of the opinion the above-entitled Social Security action should be AFFIRMED.

HISTORY OF THE CASE

On September 19, 2011, Plaintiff filed applications for a period of disability insurance and supplemental security income, alleging she became disabled on March 1, 2011. The claims were denied initially and upon reconsideration. Plaintiff filed a written request for a hearing on June 18, 2012. A video hearing was held on December 21, 2012. A vocational expert also testified at the hearing.

On May 3, 2013, the Administrative Law Judge ("ALJ") issued an unfavorable decision. Plaintiff then requested the Appeals Council review the decision. On March 14, 2014, the Appeals Council denied the request. Plaintiff now seeks judicial review in this Court.

STATEMENT OF THE FACTS

Plaintiff was born July 9, 1967 and was 45 years old at the time of the hearing (Tr. 30). Plaintiff completed the ninth grade, but never received a GED or any other schooling or training of any kind (Tr. 30, 33). Plaintiff has not worked or tried to work since she filed for disability in the fall of 2011 (Tr. 36).

Plaintiff's earliest medical records from Wadley Regional Medical Center show the beginning of a long history of obesity, lower back pain, and numbness in Plaintiff's left leg (Tr.

497, 493, 489). The Wadley Regional Medical Center performed an MRI of Plaintiff's lumbar spine on February 11, 1998, noting a mild central disc bulge at the L2-L3 level (Tr. 486).

Two years later, in 2000, Plaintiff began visiting the CHRISTUS St. Michael Healthcare Center (Tr. 474). Plaintiff's first visit to CHRISTUS came on July 20, 2000 for a headache (Tr. 474). A computer tomography showed no abnormalities and the headache was diagnosed as a tension headache (Tr. 480, 476). Plaintiff's next visit to CHRISTUS was a month later on August 18, 2000 for lower back pain (Tr. 469). The attending physician prescribed rest and Vicodin, a prescription pain reliever. (Tr. 471).

A sore throat brought Plaintiff back to CHRISTUS on September 21, 2000 for a diagnosis of acute tonsilitis (Tr. 465). On December 4, 2000 and January 4, 2001, Plaintiff went to CHRISTUS for rashes on her lower abdomen that were consistent with fungus growing in skin folds (Tr. 461, 457). Both times Plaintiff was encouraged to lose weight (Tr. 462, 458).

Plaintiff returned to CHRISTUS on April 6, 2002 after injuring her right arm (Tr. 452). Plaintiff was advised to take Advil and to return to the emergency department as needed (Tr. 456). Plaintiff came back two weeks later complaining of a cough and chest and back pain (Tr. 444). A chest x-ray was largely normal but with small calcifications, prompting a diagnosis of acute bronchitis (Tr. 447, 450).

Plaintiff visited CHRISTUS on June 3, 2002, complaining of swelling and pain in her left ankle (Tr. 439). The attending physician diagnosed her with Achilles tendonitis and prescribed Vicodin (Tr. 441, 443). Plaintiff returned to CHRISTUS almost a year later, on May 14, 2003, alleging pain in her left shoulder for six days (Tr. 427). The attending physician recommended moist heat and prescribed Soma for muscle spasms and Toradol for pain (Tr. 432). Plaintiff visited CHRISTUS again on April 22, 2004 for pain and redness in her right eye which was diagnosed as a corneal abrasion from a contact lens (Tr. 433-434). The attending physician prescribed Maxitrol (Tr. 437).

Plaintiff returned to CHRISTUS on January 25, 2005 complaining of a cough, runny nose, and chest congestion (Tr. 419). The attending physician diagnosed her with acute bronchitis (Tr. 421). A chest x-ray showed no signs of acute cardiopulmonary disease when compared to

the x-ray of April 17, 2002. (Tr. 424). The small calcifications shown on the April 17, 2002 chest x-ray appeared to be stable in the January 25, 2005 chest x-ray (Tr. 424).

Plaintiff visited CHRISTUS on March 6, 2007 with chest pain, asthma exacerbation, tobacco use disorder, gastroesophageal reflux disease and insomnia (Tr. 363). She underwent an adenosine cardiolite stress test which ruled out myocardial ischemia and infarction (Tr. 363). Her asthma was treated with a short course of steroids, azithromycin, and more aggressive use of her albuterol inhaler (Tr. 363). Further, she was counseled on smoking cessation and it was noted she smokes a full pack of cigarettes each day (Tr. 363, 377). An additional note in her chart reports Plaintiff drives and is independent (Tr. 372). Plaintiff returned to CHRISTUS on June 25, 2008 alleging a cold and a fever (Tr. 354). She was diagnosed with acute bronchitis, but a chest x-ray was normal (Tr. 361, 356).

Plaintiff visited the University of Arkansas for Medical Sciences ("UAMS") Area Health Education Center for pain in her right knee (Tr. 335). An x-ray of the knee showed no acute deformities, but degenerative narrowing of the lateral compartment with mild resultant valgus and degenerative osteophytes at the medial lateral joint lines. (Tr. 335).

On December 6, 2011, Plaintiff went to CHRISTUS for a mammogram (Tr. 349). The mammogram showed an abnormal density in the anterior left breast centrum, suggesting fibrocystic disease versus neoplasm (Tr. 350). These results prompted a follow-up ultrasound which diagnosed the lump as a probably benign fibroadenoma (Tr. 342). The attending physician recommended another ultrasound in six months to ensure no change (Tr. 342).

On January 13, 2012, Dr. Randy Terrell examined Plaintiff (Tr. 278). Dr. Terrell noted Plaintiff used a driver's license for identification and could drive, as well as use public transportation (Tr. 278). Dr. Terrell marked her positive for depression and anxiety (Tr. 279). Dr. Terrell's final assessment included chronic low back pain, probably caused by lumbar disc disease, thoracic kyphosis, morbid obesity, and hypertension (Tr. 280). The scan of Plaintiff's spine showed good alignment and no fractures, no soft tissue abnormalities and mild osteophyte formation (Tr. 283).

On January 19, 2012, Plaintiff went to UAMS Area Health Education Center for back pain (Tr. 549). No changes were made to Plaintiff's medications and no other treatments were prescribed (Tr. 552).

When Dr. James Wright conducted a residual functional capacity assessment of the Plaintiff, he found Plaintiff able to occasionally lift or carry fifty pounds and frequently lift or carry twenty-five pounds, able to stand and walk or sit about six hours in an eight hour work day (Tr. 285). Dr. Wright limited only stooping and crouching to occasionally in the postural limitations section of the residual functional capacity; all other categories were listed as frequently able (Tr. 286). Dr. Wright found no manipulative, visual, communicative, or environmental limitations (Tr. 287-88). Dr. Wright's additional comments note that the Plaintiff's alleged limitations "are not wholly credible." (Tr. 291).

On February 13, 2012, Plaintiff visited UAMS Area Health Education Center complaining of lower back pain and a urinary tract infection (Tr. 544, 547). The records from this visit show Plaintiff stated she had never smoked, although five years earlier, she told Dr. Urbina at CHRISTUS she smoked a pack of cigarettes a day and received counseling on smoking cessation.

Plaintiff returned to UAMS Area Health Education Center on March 15, 2012 for follow up on the urinary tract infection (Tr. 540). Nurse Practitioner Janice Sample prescribed Ciprofloxacin (Tr. 543). Plaintiff went back to UAMS Area Health Education Center on April 9, 2012 for yet another urinary tract infection (Tr. 527). APN Janice Sample switched out Ciprofloxacin for Doxycycline Hyclate (Tr. 530).

On May 8, 2012, Dr. John Durfor performed a case assessment and found the Plaintiff's only medically determinable impairments to be low back pain and hypertension (Tr. 336). Plaintiff had no gait problem and no respiratory problems (Tr. 336). Dr. Durfor further noted Plaintiff's morbid obesity, which "would explain some physical limitations." (Tr. 336).

Plaintiff returned to the UAMS Area Health Education Center on May 15, 2012 for another urinary tract infection and back pain (Tr. 517). Nurse Practitioner Janice Sample continued the Doxycycline regimen and encouraged Plaintiff to follow a diabetic diet and

exercise in order to lose weight (Tr. 521). Plaintiff visited the UAMS Area Health Education Center again on July 30, 2012 for another urinary tract infection (Tr. 512). Nurse Sample switched Plaintiff off the Doxycycline and onto Ciprofloxacin (Tr. 515).

Plaintiff visited the UAMS Area Health Education Center on September 4, 2012 for disability paperwork and an upper respiratory infection (Tr. 506). Nurse Sample noted Plaintiff could only lift ten pounds and could not crawl, climb, twist, or bend, in contrast to Dr. Wright's residual functional capacity assessment (Tr. 509). Plaintiff returned to the UAMS Area Health Education Center on November 14, 2012 for pain in her right arm (Tr. 501). Nurse Sample diagnosed Plaintiff's arm pain as an injury to the ulnar nerve but did not prescribe anything or order any other treatment for it (Tr. 503).

On January 28, 2013, Nurse Sample wrote a residual functional capacity assessment for Plaintiff (Tr. 555). In it, she indicated Plaintiff is able to stand and walk less than two hours in an eight hour work day, and able to sit less than two hours in an eight hour work day (Tr. 555). Nurse Sample expected Plaintiff to require thirty minutes to an hour of break, far more than the normal two ten to fifteen minute breaks (Tr. 555). Nurse Sample indicated Plaintiff must never twist, stoop, crouch, kneel, crawl, or climb stairs or ladders and must avoid all exposure to extreme heat and cold, wetness, humidity, noise, fumes, odors, dusts, gases, poor ventilation, and hazards (Tr. 556). Further, Nurse Sample noted she anticipated Plaintiff to be absent from work more than three times a month and Plaintiff's symptoms were onset more than three years ago (Tr. 558).

Plaintiff's Exhibit A records Plaintiff's visit with Dr. Feir (Ex. A, pg. 2). In contrast to several other reports, Dr. Feir recorded that Plaintiff does not have a driver's license and has never had one (Ex. A, pg. 2). Dr. Feir conducted a Wechsler Adult Intelligence Scale test and found Plaintiff's IQ to be 65 (Ex. A, pg. 4). Finally, Dr. Feir stated the combination of mild mental retardation, depression and back pain would keep Plaintiff from working (Ex. A, pg. 5). This report is dated May 20, 2013, which is after the Appeals Council's final determination in Plaintiff's administrative disability proceeding.

## THE HEARING

At the video hearing December 21, 2012, Plaintiff testified she was 45 years old and lives with her husband and adult daughter (Tr. 30, 36). Plaintiff stated she weighed about two hundred ninety-nine pounds at the time of the hearing (Tr. 37). Plaintiff testified she completed the tenth grade at Riverdale High School in all resource classes and was not able to complete her GED (Tr. 30, 31). Plaintiff stated that she has no other vocational training, trade school, or college (Tr. 31). Plaintiff stated her husband must help her read (Tr. 31). When the ALJ asked Plaintiff about driver's licenses, Plaintiff testified she has never had a driver's license but has a permit because someone administered an oral test when she could not read the test on the computer (Tr. 31). Plaintiff clarified, though, while she has no physical difficulties driving she is too nervous about driving to drive much (Tr. 32).

Plaintiff explained she worked sporadically but had not worked or tried to work since 2002 (Tr. 36). Plaintiff stated her longest work experience was a three-month waitressing position at Golden Corral, but she could not sit often enough to alleviate her back pain (Tr. 35). Plaintiff reported high blood pressure, stress, shortness of breath, right leg pain and back pain (Tr. 36, 42).

Plaintiff testified she cannot walk more than fifteen or twenty minutes before she must sit and rest but does not use a cane or any other assistive device (Tr. 37-38). Plaintiff said she does vacuum, fold the laundry, cook easy meals, and other light housekeeping but she must sit down and rest after fifteen or twenty minutes and her daughter helps (Tr. 39, 38). Plaintiff also said she cares for her own personal hygiene without assistance (Tr. 38). Plaintiff testified her husband runs all the errands, from the grocery store to the drugstore, and she does not participate in any activities outside the home (Tr. 39). Plaintiff testified she watches TV and plays board games to pass the time (Tr. 40, 41).

Plaintiff explained she has trouble sleeping because of her back pain which in turn makes her groggy during the day (Tr. 38-39). When the ALJ asked Plaintiff if she could pick up ten pounds, Plaintiff responded "maybe so." (Tr. 41). Plaintiff testified she has never seen a specialist of any kind about her back pain but Nurse Practitioner Sample recommends another

MRI (Tr. 41). Plaintiff stated she has never undergone any testing to determine either her IQ or any learning disabilities that might affect her.

A vocational expert also testified at the hearing. The ALJ asked the vocational expert to assume as follows:

> An individual who . . . at the time of application would have been a younger individual, 18-44 . . . now 45 to 49, with a limited educations… probably no relevant work history… who can lift and carry up to ten pounds occasionally, less than ten frequently, sit up to six hours out of an eight-hour day, standing and walking for just two hours out of an eight-hour day. . . with the need for a sit/stand option at thirty minute intervals."

(Tr. 43). The ALJ imposed the further limitations of no climbing ladders, ropes or scaffolds and only occasional climbing ramps and stairs, balancing, kneeling, crawling, crouching, and stooping (Tr. 43). Lastly, the ALJ said the hypothetical individual should "avoid exposure to hazards such as unprotected heights, fast-moving machinery, sharp objects … temperature extremes, concentrated exposure to vibration and … would limit the individual to simple instructions. . . ." (Tr. 43-44).

The vocational expert testified there was work available for such a person, giving examples of lens inserter, addresser, or charge account clerk (Tr. 44). The ALJ then asked if a person with the limitations described by Ms. Freeman would be able to perform the example jobs or any other jobs and the vocational expert testified there would be no work for a person with those limitations (Tr. 44). Plaintiff's attorney further limited the hypothetical person to require unscheduled ten-minute work breaks every hour and the vocational expert testified this would preclude employment (Tr. 45). The vocational expert also testified that a person who spend more than ten percent of the eight hour work day off task and was absent more than twice a month would not be able to maintain employment (Tr. 45).

ADMINISTRATIVE LAW JUDGE'S FINDINGS

The ALJ made the following findings:

1. The claimant has not engaged in substantial gainful activity since September 19, 2011, the application date.

2. The claimant has the following severe impairments: lumbar disc disease, bone spurs in the right leg, hypertension, obesity, and learning disorder (provisional).

3. The claimant does not have an impairment or combination of impairments that met or medically equals the severity of one of the listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1.

4. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a wide range of sedentary work as defined in 20 C.F.R. 416.967(a). The claimant can perform the sitting, standing, lifting, and carrying requirements for sedentary work. She cannot climb ladders, ropes, or scaffolds. She occasionally can climb ramps/stairs, balance, stoop, crouch, kneel, and crawl. The claimant should avoid hazards, temperature extremes, and concentrated exposure to vibration. She can understand, remember, and carry out simple instructions.

5. The claimant has no past relevant work.

6. The claimant was born on July 9, 1967, and was 44 years old, which is defined as a younger individual age 18-44, on the date the application was filed. At present the claimant is a younger individual age 45-49.

7. The claimant has a limited education but is literate and able to communicate in English.

8. Transferability of job skills is not an issue because the claimant does not have past relevant work.

9. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs in significant numbers in the national economy that the claimant can perform.

10. The claimant has not been under a disability, as defined in the Social Security Act, since September 19, 2011, the date the application was filed.

## STANDARD OF REVIEW

In an appeal under § 405(g), this Court must review the Commissioner's decision to determine whether there is substantial evidence in the record to support the Commissioner's factual findings and whether the Commissioner applied the proper legal standards in evaluating the evidence. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994); 42 U.S.C. § 405(g). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Cook v. Heckler*, 750 F.2d 391, 392 (5th Cir. 1985); *Jones v. Heckler*, 702 F.2d 616, 620 (5th Cir. 1983). This Court cannot reweigh the evidence or substitute its judgment for that of the Commissioner, *Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1995), and conflicts in the evidence are resolved by the Commissioner, *Carry v. Heckler*, 750 F.2d 479, 482 (5th Cir. 1985).

Thus, as factfinder, the ALJ has the sole responsibility for weighing the evidence and choosing whichever limitations are most supported by the record. *Muse v. Sullivan*, 925 F.2d 785, 790 (5th Cir. 1991). The ALJ is not bound by the state agency physicians' opinions, but must acknowledge those opinions and justify weight given to those opinions with evidence in the case record. SSR 96-6p. The ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion. *See Martinez v. Charter*, 64 F.3d 172, 176 (5th Cir. 1995).

SEQUENTIAL EVALUATION PROCESS

Pursuant to the statutory provisions governing disability determinations, the Commissioner has promulgated regulations that establish a five-step process to determine whether a claimant suffers from a disability. 20 C.F.R. § 404.1520 (2011). First, a claimant who, at the time of her disability claim, is engaged in substantial gainful employment is not disabled. 20 C.F.R. § 404.1520(b) (2011). Second, the claimant is not disabled if her alleged impairment is not severe, without consideration of her residual functional capacity, age, education, or work experience.[1] 20 C.F.R. § 404.1520(c) (2011). Third, if the alleged impairment is severe, the claimant is considered disabled if her impairment corresponds to a listed impairment in 20 C.F.R., Part 404, Subpart P, Appendix 1 (2011). 20 C.F.R. § 404.1520(d) (2011). Fourth, a claimant with a severe impairment that does not correspond to a listed impairment is not considered disabled if she is capable of performing her past work. 20 C.F.R. § 404.1520(e) (2011). Finally, a claimant who cannot return to her past work is not disabled if she has the residual functional capacity to engage in work available in the national economy. 20 C.F.R. § 404.1520(f) (2011).

---

[1]Residual functional capacity is a medical assessment of what a claimant can do in a work setting in spite of the functional limitations and environmental restrictions imposed by all of his medically determinable impairments. SSR 83-10 at 7. A claimant's residual functional capacity is determined by combining a medical assessment of the claimant's impairments with descriptions by physicians, the applicant, or others of any limitations on the claimant's ability to work. *Hollis v. Bowen*, 837 F.2d 1378, 1386-87 (5th Cir. 1988).

ANALYSIS

I. Plaintiff's Claim

Plaintiff asserts the ALJ erred in failing to properly assess her low IQ in combination with her other exertional and non-exertional impairments. She states she was 45 years old at the time of the hearing and had a ninth grade education, having failed the 10th grade. She was in special education while in school and suffers from a number of impairments, including: chronic back pain; asthma; shortness of breath and wheezing; thoracic kyphosis; morbid obesity; mild osteophyte formation at multiple levels; chronic knee pain; degenerative narrowing of the lateral compartment of the right knee with degenerative osteophytes at the medial lateral joint lines; left shoulder pain; mild central disc bulge at L2-L3; chronic UTI's, left ulnar nerve compression, an IQ below 65, and major depressive disorder.

Despite this, the ALJ found Plaintiff only had severe impairments of lumbar disc disease, bone spurs in the right knee, hypertension, obesity, and learning disorder (provisional). Plaintiff states it is unclear what the ALJ meant by the term "provisional," but the ALJ obviously knew she had a learning disorder; however, Plaintiff contends the ALJ did not send her for any mental evaluation or IQ testing.

After the hearing, Plaintiff saw Dr. Betty Feir, Ph.D., for a mental evaluation and IQ testing. Plaintiff asserts the result of that exam and testing show she meets Listing 12.05, but although this evaluation was forwarded to the Appeals Council, the evidence was not included in the transcript of this case. Plaintiff argues when new evidence becomes available after the Secretary's decision and there is a reasonable probability this evidence would change the outcome of the decision, a remand is appropriate so that the new evidence can be considered.

According to Plaintiff, Dr. Feir showed Plaintiff obtained a full-scale IQ score of 65 on the WAIS-IV, placing her in the extremely low range of overall intellectual functioning. She scored a 63 in verbal comprehension, a 77 in perceptual reasoning, a 63 in working memory, and a 76 in processing speed. Dr. Feir gave her a diagnosis of mild mental retardation based on her IQ score and history of special education as well as major depressive disorder. She had an Axis V score of 50.

Plaintiff testified she was in special education and did not graduate. She does not have a driver's license but has a permit issued on an oral exam because she could not read the test on the computer. Nothing further was developed by the ALJ at the time of the hearing with respect to Plaintiff's learning disability, although she testified she had not had any IQ tests or other tests to help understand her learning disability since she had been out of school.

Plaintiff contends according to Listing 12.05, a claimant with a full scale IQ score of 60 through 70 must demonstrate a physical or other mental impairment imposing additional and significant work related limitation of function. The issue is not whether the claimant can perform substantial gainful activity but whether she has a physical impairment, other than the acknowledged mental impairment, which causes significant work-related limited function; in other words, a physical or additional mental impairment with more than a slight or minimal effect on claimant's ability to perform work.

In her case, Plaintiff asserts she has a full-scale IQ score of 65 as well as chronic back pain with radiculopathy and decreased strength in her left hand, arms, and legs. Nurse Practitioner Janice Sample completed an RFC form setting Plaintiff's limitations as occasionally carrying 20 pounds, frequently carrying 10 pounds, stand and walk less than two hours, sit less than two hours, requiring 30 minutes to an hour above and beyond normal break times, never twist, stoop, crouch, kneel, crawl, climb stairs, or climb ladders, no handling, fingering, or feeling, occasional reaching and pushing or pulling, avoid exposure to extreme cold, extreme heat, wetness, humidity, noise, fumes, and hazards, incapable of low stress, absenteeism of more than three times a month, and inability to keep the neck in a frequent or constant position.

Next, Plaintiff complains the ALJ's hypothetical question to the vocational expert only referred to her low IQ by stating the hypothetical individual would be limited to simple instructions. Plaintiff contends this is not enough for purposes of establishing she could perform the work identified by the vocational expert. She argues the question posed to the vocational expert did not adequately depict her condition, meaning the response to this question did not constitute substantial evidence.

Plaintiff goes on to discuss whether controlling weight should be given to the medical opinion of a treating source. She acknowledges only opinions from acceptable medical sources can be used to determine the existence of a medically determinable impairment, but says the ALJ may use evidence from other sources to show the severity of the claimant's impairment and how it affects the ability to work. The case record should reflect consideration of opinions from medical sources such as nurse practitioners who are not acceptable medical sources.

Plaintiff states Nurse Practitioner Janice Sample has treated her for four years, including examinations as well as prescribing medication. She contends the RFC form Nurse Sample completed addresses Plaintiff's physical limitations and Dr. Feir's IQ testing addresses her mental limitations, and these amount to substantial evidence of Plaintiff's impairments.

## II. Discussion

### A. Dr. Feir's Report

Plaintiff asserts her evaluation by Dr. Feir was forwarded to the Appeals Council but was not considered by the Council or included in the transcript of this case. Plaintiff argues when new evidence becomes available after the Secretary's decision and there is a reasonable probability this evidence would change the outcome of the decision, a remand is appropriate so that the new evidence can be considered.

Dr. Feir's report is appended to Plaintiff's brief. The report shows the date of evaluation as May 20, 2013, and Dr. Feir hand-wrote the date of May 20, 2013 when she signed the document. The case record shows the ALJ's decision was rendered on May 3, 2013, and Plaintiff requested review of this decision on May 13, 2013. The Appeals Council denied review on May 14, 2013, almost a week before Dr. Feir's evaluation of Plaintiff. This denial of review indicates the Appeals Council received additional exhibits consisting of undated records from Liberty-Eylau High School, but makes no mention of any records from Dr. Feir. The chronology and the Appeals Council's order makes clear Dr. Feir's report was not submitted to the Appeals Council prior to the decision being rendered.

20 C.F.R. §404.970(b) provides if new and material evidence is submitted, the Appeals Council must consider this additional evidence only where it relates to the period on or before the

date of the ALJ hearing decision. Records submitted for the first time to the Appeals Council while a request for review is pending become part of the record for purposes of appeal. *Higginbotham v. Barnhart*, 405 F.3d 332, 337 (5th Cir. 2005). In the decision after remand in *Higginbotham*, the Fifth Circuit expressly stated "if additional evidence is presented while the case is pending review by the Appeals Council, courts of appeals customarily review the record as a whole, including the new evidence, in order to determine whether the Commissioner's findings are still supported by substantial evidence." *Higginbotham v. Barnhart*, 163 F.App'x 279, 2006 WL 166284 (5th Cir., January 10, 2006) (appeal after remand). However, where records are not submitted until after the Appeals Council renders its decision, the Commissioner does not err by failing to consider such records. *Nemoede v. Astrue*, civil action no. 2:05cv129, 2008 WL 4332521 (N.D.Tex., September 22, 2008). Because Dr. Feir's report was not presented while the case was pending review by the Appeals Council, it was not before the Commissioner and there was no error in failing to consider it.

Nor has Plaintiff shown a remand is warranted. In order to justify a remand, the Plaintiff must adduce new, material evidence and demonstrate good cause for the failure to incorporate the evidence into the record in a prior proceeding. *Leggett v. Chater*, 67 F.3d 558, 567 (5th Cir. 1995); *Pierre v. Sullivan*, 884 F.2d 799, 803 (5th Cir. 1989). A medical examination conducted after the ALJ's decision is by itself not sufficient to justify a remand. *Leggett*, 67 F.3d at 567. Where a claimant fails to explain why she could not obtain and submit an evaluation either before the ALJ's decision or before the Appeals Council denies review, good cause has not been shown. *Current v. Astrue*, civil action no. 08-4963, 2009 WL 3319887 (E.D.La., October 13, 2009), *citing Leggett*, 67 F.3d at 567. Plaintiff fails to show good cause, instead claiming she presented Dr. Feir's report to the Appeals Council even though the report is dated six days after the Appeal Council's decision.

The evidence properly before the Commissioner showed during her visits to Texarkana Community Clinic, Plaintiff's judgment, insight, and memory were intact and she was oriented to time, place, and person, although she alleged depression. A report dated November 14, 2012 stated her thought content and affect appeared normal. She denied limitations in reading and

writing during a January 13, 2012 consultative evaluation by Dr. Randy Terrell and during the process of applying for disability benefits, she listed impairments of back problems, asthma, and high blood pressure as the conditions which caused her to stop working. She did not see a doctor for learning problems prior to her post-decision evaluation by Dr. Feir.

Plaintiff reported she could pay bills, use a checkbook, and handle a savings account. She did not have to be reminded to go places or to take care of her personal needs and grooming. She made coffee in the mornings and stated she could prepare meals such as hot dogs, microwaveable dinners, sandwiches, and soups with the help of her daughter. At the consultative exam, Plaintiff stated she could prepare simple means without help. She played board games and watched television.

Although she testified her husband helped her read letters from her representative, Plaintiff completed her own function report and filled out her list of medications. Plaintiff also testified she did not have a driver's license, but the evidence showed she did have a driver's license which she used for identification at the consultative exam.

Based on this evidence, the ALJ determined Plaintiff had the severe impairment of a provisional learning disorder. This impairment was accounted for by the ALJ's determination Plaintiff could understand, remember, and carry out simple instructions. The evidence Plaintiff has an IQ of 65 appears only in Dr. Feir's report and thus was not before the ALJ or the Appeals Council. The ALJ's RFC assessment concerning Plaintiff's mental state, and the limitations imposed as a result of this assessment, are supported by substantial evidence. *See, e.g.*, *Williams v. Colvin*, 575 F.App'x 350 (5th Cir., July 15, 2014).

B. Nurse Sample's Assessment of her Physical RFC

Plaintiff appears to argue the ALJ did not give sufficient credence to Nurse Sample's assessment of her RFC. Nurse Sample is a nurse practitioner and thus not an "acceptable medical source." *Muniz v. Colvin*, civil action no. EP-14-cv-122, 2015 WL 5062303 (W.D.Tex., August 27, 2015); SSR 06-03p. 20 C.F.R. §404.1513(d) provides the Commissioner "may also use" evidence from sources other than acceptable medical sources to show the severity of a claimant's impairments and how these affect the ability to work.

The ALJ discussed Nurse Sample's conclusions, but ultimately gave it little weight, explaining these conclusions "clash with the medical evidence of record from herself and from medical doctors. Nothing in these records justifies the rather extreme limitations assigned in Ms. Sample's report." (Tr. 20). The Fifth Circuit has held conflicts in the evidence are for the Commissioner, not the courts, to resolve. *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005). The ALJ's decision to reject Nurse Sample's assessment in favor of other medical evidence indicating Plaintiff had lesser restrictions than Nurse Sample found was supported by substantial evidence.

C. The Vocational Expert's Testimony

Plaintiff argues a vocational expert's testimony based on an insufficient hypothetical question does not constitute substantial evidence. She states the Court must determine whether the ALJ's hypothetical questions adequately depicted her condition and argues those questions did not, apparently because they did not incorporate the limitations suggested by Dr. Feir and Nurse Sample.

The ALJ's hypothetical question was stated as follows:

I'm going to ask you to assume a hypothetical individual who is a younger individual, at the time of application would have been a younger individual, 18 to 44. Currently we have an individual 45 to 49, with a limited education as that term is defined in the regulations, work experience as you described - probably no relevant work history.

I'm going to ask you to assume someone who can lift and carry up to 10 pounds occasionally, less than 10 frequently, sit up to six hours out of an eight hour day, standing and walking for just two hours out of an eight hour day. And I'm going to ask you to assume need for a sit-stand option at 30 minute intervals, no climbing ladders, ropes, or scaffolds. Other postural functions such as climbing ramps and stairs, balancing, kneeling, crawling, crouching, stooping I'm going with occasional. The individual should avoid exposure to hazards such as unprotected heights, fast-moving machinery, sharp objects [inaudible], should also avoid exposure to temperature extremes, concentrated exposure to vibration and would indicate an individual because of the lack of past work and the educational background would limit the individual to simple instructions. Would there be jobs in the regional or national economy that a person with this profile could perform?

(Tr. 43-44). The vocational expert responded such a person could work as a lens inserter, an addresser, or a charge account clerk.

A hypothetical question posed by the ALJ need incorporate only those claimed disabilities supported by the evidence and recognized by the ALJ. *Masterson v. Barnhart*, 309 F.3d 267, 274 (5th Cir. 2002). The hypothetical question posed by the ALJ meets these criteria; the expressed limitation of simple instructions was sufficient to incorporate the provisional learning disorder limitation found by the ALJ.

Although Plaintiff argues her limitations preclude her from performing the jobs identified by the vocational expert, she bases this claim on the limitations she alleges but which the ALJ did not accept. Because substantial evidence supported the RFC determination made by the ALJ, the vocational expert's testimony amounted to substantial evidence supporting the Step Five finding. *Masterson,* 309 F.3d at 273; *see also Price v. Astrue*, 401 F.App'x 985, 2010 WL 4683814 (5th Cir., November 18, 2010); *Walker v. Colvin*, civil action no. 1:12cv59, 2013 WL 3155911 (N.D.Tex., June 21, 2013) (where the ALJ did not include additional limitations suggested by claimant's counsel, the testimony of the vocational expert was substantial evidence upon which the ALJ appropriately relied in determining Plaintiff could perform his past relevant work).

**III. Conclusion**

"The Commissioner's decision is granted great deference and will not be disturbed unless the reviewing court cannot find substantial evidence in the record to support the Commissioner's decision or finds that the Commissioner made an error of law." *Legget v. Chater*, 67 F.3d 558, 565-66 (5th Cir. 1995). Having reviewed the record, this Court finds the record demonstrates the Administration correctly applied the applicable legal standards and that substantial evidence supports the Administration's determination that Plaintiff is not disabled. Accordingly, it is

**ORDERED** the above-entitled Social Security action is **AFFIRMED** and this civil action is **DISMISSED WITH PREJUDICE**.

**SIGNED this 28th day of October, 2015.**

CAROLINE M. CRAVEN
UNITED STATES MAGISTRATE JUDGE